LOTTINGER, Judge.
This is a tort action instituted by husband and wife wherein damages are sought arising out of an automobile accident which occurred in the City of Baton Rouge at about 7:15 o’clock P.M. on the 6th day of February, 1958. The petition sets forth that just prior to the accident plaintiff Kattie Bell Holmes was traveling north on North Acadian Thruway, a three lane, one way street for north bound traffic, and that,, after having slowed down and given proper signal of her intention to make a left turn onto Noah Street, her vehicle was run into in the rear by that of defendant’s insured, Melvin E. Mut. The defendant’s answer denies plaintiffs’ version of the accident and alleges that just prior to the collision Mut was traveling north on North Acadian Thruway in the center lane of the three north bound lanes at which time plaintiff Kattie Bell Holmes was proceeding north to *699 the right of Mut and that the accident occurred when she suddenly and without warning turned to her left directly in Mut’s path.
The matter is before us on an appeal taken by the plaintiffs from a judgment rendered adversely to them by the lower court.
Plaintiff Kattie Bell Holmes testified that she had been proceeding in the left lane of North Acadian for about a block and that after having signalled her intention to turn left and just as she was attempting to turn, she was hit from the rear. On cross-examination, she estimated her speed at twenty or twenty-five miles per hour and approximated her position as being about a foot from the left curbing of the Thruway. Although it was dark enough for lights and hers were burning she did not remember seeing any lights in the back of her car and was not aware that a car was following her.
The above testimony was corroborated by that of Maxine London, a girl fifteen years old at the time of the accident, who testified that she was a passenger in the front seat of the Holmes car. It was her recollection that while the wheels of the car had perhaps been turned the car was still more or less straight when it was struck.
Delores Evans, who was seventeen years old at the time of the accident, testified on behalf of plaintiffs. She stated that just prior to the accident she was standing on the northwest corner of the intersection waiting for traffic to clear in order to cross North Acadian when she saw two cars proceeding northward on the Thruway in the left traffic lane. As the lead car slowed to turn left it was struck from the rear by the following vehicle. She stated that both cars had their lights on and that there were no other cars in the vicinity at tire time. She saw Maxine London, an acquaintance of hers, in the car with Kattie Bell Holmes. When questioned about signals she replied that she “didn’t pay no attention.”
Reverend Frank Baker, who' arrived at the scene of the accident shortly after its occurrence with Clifton Holmes, testified on behalf of the latter and his wife. He stated that he saw skidmarks of approximately two car lengths which were located on the left side of the Thruway for northbound traffic. He placed the Mut car in the left lane with its front partially in the middle lane. He stated that the damage to the Mut car was to the left front but admitted that the photographs introduced as D-l and D-2 showed no damage to the left portion of the automobile but only to the right.
Clifton Holmes testified to but very little with respect to what he saw upon arriving at the scene stating in a rather general way that he saw the Mut car “sitting kind of catacornered across the line in the left hand lane and in the center lane”.
The accident was investigated by Police Officers Milton LeBlanc and George H. Reily, both of whom were called to testify on behalf of plaintiffs. Officer LeBlanc stated that he found thirty feet of skid-ed the skidmarks leading to the Mut car and that the damage was to the left front of the Mut car and the left rear of the Holmes car. He stated that he arrived at the scene about five minutes after the accident had occurred at which time neither vehicle had been moved.
On cross examination this witness testified that the skidmarks of the Mut car started in the center lane of the highway and veered very slightly to the left lane. He determined from the skidmarks, debris and other evidence that the collision occurred fifteen feet east of the west curb of North Acadian, seventeen feet west of the east curb of North Acadian and twenty-five feet south of Noah Street. The Holmes car came to rest one hundred and thirty-four feet north of the Mut car. He repeated that to the best of his memory the damage was to the left front of the Mut car but admitted that D-l and D-2 showed the car as it appeared after the accident and, fur- *700 titter, that they showed the damage as being to the right front. He and Officer Reily interrogated Kattie Bell Holmes in the emergency room of the hospital shortly after the accident at which time, he testified, she stated that she had been on the right side of the street and had “cut across to make a left hand turn to the west on Noah”.
Officer Reily testified that the damage was to the right front of the Mut vehicle and otherwise generally corroborated the testimony of Officer LeBlanc.
Melvin Mut, Jr. testified that he was a student of architecture and that just before the accident was traveling alone from his part time job as draftsman to his father’s place of business at Acadian and Senaca. He stated that he was proceeding in the center lane and had travelled in that lane for at least ten blocks. His version of the accident was that he first saw the Holmes car when he was about a half block away at which time it was “to my right and up ahead”. He continued in his path at about thirty or thirty-five miles per hour and when he was within two or three car lengths Kattie Bell Holmes turned northwesterly into his path. He stated that he immediately applied his brakes and tried to turn to his left to avoid the collision. The right front of his car struck the left rear of the Holmes car. He stated that his car had not been moved when the police arrived and that the skidmarks were all in the center lane except that the left front tire crossed the line when the car came to rest in a northwesterly direction.
Mr. J. Reed Weaver, Jr. testified that he stopped at the scene previous to the arrival of the police at which time the Mut car was headed in a northwesterly direction with its rear in the center lane. He observed the skidmarks leading to the Mut car which he described as starting in the center lane and ending with part in the center lane and part in the left lane.
Melvin Mut, Sr. testified that he arrived at the scene shortly after the accident at which time the position of his son’s car was such that the rear wheels were in the center lane with the left front wheel perhaps three or four feet over into the left lane. He said he saw the skidmarks left by this car which started in the center lane and veered off slightly into the left lane.
With the above before him, the trial judge concluded:
“In view of the fact that the plaintiff made a statement to the officers at the time that this accident occurred which is in the same factual detail as that given by the Insured, and in view of the fact that the physical findings corroborate the version given by the Insured as to how this accident happened, it appears to me that it is more reasonable to believe that this collision resulted in the manner stated by the Insured, especially when taking into consideration the fact that the accident did not occur in the intersection but was some twenty five feet south of the intersection of Noah Street and that if the accident had happened in the manner in which the Plaintiff testified on the trial of the case the physical damage to the two cars could not have been caused in the manner that she testified the accident happened.”
We think the reasoning of the trial judge to be eminently correct and, therefore, the judgment appealed from is affirmed.
Judgment affirmed.